## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Thomas B. McNamara

| | |
|---|---|
| In re:<br><br>MALIK ABDUL HAMEED,<br><br>Debtors.<br><br>———————————————————<br><br>ALTAF SIAL,<br><br>Plaintiff,<br><br>v.<br><br>MALIK ABDUL HAMEED,<br><br>Defendant. | Bankruptcy Case No. 25-14898-TBM<br>Chapter 7<br><br><br><br><br><br>Adv. Pro. No. 25-01331-TBM |

—————————————————————————————————————————

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
—————————————————————————————————————————

### I.       Introduction.

The Debtor, Malik Abdul Hameed (the "Debtor"), filed for protection under Chapter 7 of the Bankruptcy Code.[1]  Pre-bankruptcy, creditor, Altaf Sial (the "Plaintiff"), sued the Debtor (and others) in the Arapahoe County (Colorado) District Court (the "State Court") in the case captioned:  *Altaf Sial v. Malik Hameed, Jazi Inc., Zia M Khan, Rani Unnisa, et al.*, Case No. 23-CV-031166 (District Court, Arapahoe County, Colorado) (the "State Court Action").  On July 14, 2025, the State Court entered a Judgment in the State Court Action against the Debtor and in favor of the Plaintiff for civil theft, breach of fiduciary duty, breach of contract, fraud and conversion in the amount of $504,237.64.  The State Court also held the Debtor jointly and severally liable (with another defendant) for an additional $126,000.00 debt owed to the Plaintiff.  The Debtor did not appeal; the Judgment is final.   On his Schedule D, the Debtor conceded that he is indebted to the Plaintiff by virtue of the Judgment.

Post-bankruptcy, the Plaintiff commenced this Adversary Proceeding against the Debtor.  The Plaintiff asserted that the debt owed by the Debtor to him under the Judgment is nondischargeable under Sections 523(a)(a)(2) (fraud), (a)(4)

---

[1]       11 U.S.C. § 101 et seq.  Unless otherwise indicated, all references to "Section" are to Sections of the Bankruptcy Code.

(embezzlement), and (a)(6) (willful and malicious injury).  The Debtor countered that the debt is dischargeable.  The dispute has been set for trial.  In the run-up to trial, the Plaintiff filed a "Motion For Summary Judgment" (the "Summary Judgment Motion") arguing that the Judgment in the State Court Action should be afforded collateral estoppel effect.[2]  More specifically, the Plaintiff asked that the Court recognize the Judgment and "preclude the Debtor from contesting such factual issues" in the Judgment.  The Summary Judgment Motion is a request for partial summary judgment because the Plaintiff recognized that a trial may be necessary on some issues and, therefore, the Plaintiff did ask for the entry of a judgment of nondischargeability.  The Debtor contested the Summary Judgment Motion.  The matter has been fully briefed.  For the reasons set forth in this Order, the Court grants the Summary Judgment Motion and determines that the Judgment issued by the State Court in the State Court Action is entitled to full collateral estoppel effect and the Debtor is precluded from contesting the facts relied upon by the State Court.

## II.      Jurisdiction and Venue.

The Court has jurisdiction to enter final judgment in this nondischargeability dispute pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C § 157(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning administration of the bankruptcy estate); § 157(b)(2)(B) (allowance or disallowance of claims against the estate); (b)(2)(I) (determinations as to the dischargeability of particular debts); and § (b)(2)(O) (other proceedings affecting the liquidation of assets of the estate.  Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.  No party challenged the Court's jurisdiction or the Debtor's choice of venue in the District of Colorado.  Thus, the Court finds that it has jurisdiction to enter final judgment in this Adversary Proceeding and venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  S*ee also Johnson v. Riebesell* (*In re Riebesell*), 586 F.3d 782, 793-94 (10th Cir. 2009) (bankruptcy courts have jurisdiction to determine nondischargeability of debts, liquidate nondischargeable debts, and enter a monetary judgment on nondischargeable debts).

## III.      Procedural Background.[3]

## A.      The Bankruptcy Main Case.

On August 5, 2025 (the "Petition Date"), the Debtor filed for relief under Chapter 7 of the Bankruptcy Code thereby initiating the main bankruptcy case: *In re Hameed*, Bankr. Case No. 25-14898-TBM (Bankr. D. Colo.) (the "Main Case").  On his Statement

---

[2]      Docket No. 21.  Unless otherwise indicated, the Court will refer to documents from the CM/ECF docket for this Adversary Proceeding, *Sial v. Hameed (In re Hameed),* Adv. Pro. No. 25-01331-TBM (Bankr. D. Colo.) using the convention: "Docket No. __."

[3]      The Court takes judicial notice of the Docket.  *See St. Louis Baptist Temple, Inc. v. F.D.I.C.,* 605 F.2d 1169, 1172 (10th Cir. 1979) (court may sua sponte take judicial notice of its own docket and "in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue.").

of Financial Affairs, the Debtor identified the State Court Action.[4]  The Debtor characterized the State Court Action as "Concluded."[5]  On his Schedule D, the Debtor identified the Plaintiff as a creditor holding a secured, noncontingent, liquidated, and undisputed claim in the amount of $602,237.64 because of a Judgment issued in the State Court Action.[6]  The Debtor asserted that a $8,424.64 portion of such claim was unsecured whilst the balance, was secured by collateral worth $1,057,400.[7]  Later, the Plaintiff filed Proof of Claim No. 9 in the Main Case as a general unsecured claim in the amount of $504,237.64 (the "Plaintiff's Claim").  The Plaintiff attached a copy of the Judgment from the State Court Action to the Plaintiff's Claim.  The Debtor did not object to the Plaintiff's Claim, which has been deemed allowed.

**B.**     **The Adversary Proceeding.**

      **1.**     **The Complaint.**

About three months after the Petition Date, on November 10, 2025, the Plaintiff, timely filed a "Complaint for Determination of Dischargeability of Debt Under 11 U.S.C. §523(a)" (the "Complaint") thereby initiating this Adversary Proceeding: *Altaf Sial v. Malik Abdul Hameed* (*In re Malik Abdul Hameed),* Adv. Pro. No. 25-01331-TBM (Bankr. D. Colo.) (the "Adversary Proceeding").[8]  In the Complaint, the Plaintiff asserted three claims.

The First Claim for Relief alleged that the Debtor "perpetuated fraud upon Mr. Sial" and also made "false representations."  The Plaintiff requested judgment under Section 523(a)(2)(A) for such fraud and false representations.  The Second Claim for Relief (titled "Embezzlement") asserted that the Debtor "obtained money and property from and incurred debts and liabilities to Mr. Sial by fraud or defalcation while acting in a fiduciary capacity, embezzlement and/or larceny."  The Plaintiff requested judgment under Section 523(a)(4) for "fraud while acting in a fiduciary capacity and/or embezzlement of Mr. Sial's . . . property . . . ."  The Third Claim for Relief alleged that the Debtor "committed theft when he knowingly obtained, retained, and/or exercised control over Mr. Sial['s] . . . property by deception" and requested judgment under Section 523(a)(6) for "willful and malicious injury."[9]

      **2.**     **The Debtor's Answer.**

On December 3, 2025, the Debtor, acting *pro se*, submitted his "Answer" to the Complaint (the "Answer").[10]  In the Answer, the Debtor admitted a few of the factual

---

[4]     Main Case Docket No. 11 at 3.  Unless otherwise indicated, the Court will refer to documents from the CM/ECF docket for the main Bankruptcy Case, *In re Hameed*, Bankr. Case No. 25-14898-TBM (Bankr. D. Colo.) using the convention: "Main Case Docket No. ___."

[5]     *Id.*

[6]     Main Case Docket No. 15 at 1.

[7]     *Id.*

[8]     Docket No. 1.

[9]     *Id.*

[10]     Docket No. 5.

allegations in the Complaint, denied most of the factual allegations, and asserted that the Court should "discharge all . . . debts filed under Ch 7 Bankruptcy. . . ."[11]

### 3.      Pre-Trial Proceedings.

On January 15, 2026, the Court conducted a Pretrial Scheduling Conference.[12] Thereafter, the Court entered a "Scheduling Order" setting the dispute framed by the Complaint and Answer for a one-day trial commencing on August 18, 2026.[13]  The Court also set a series of pre-trial deadlines.

### 4.      The Summary Judgment Motion, Response, Reply, Sur-Reply, Supplement, and Supplement Response.

In advance of the trial, the Plaintiff timely filed his Summary Judgment Motion arguing that the Judgment in the State Court Action should be afforded collateral estoppel effect.[14]  Thereafter, the Debtor, now represented by counsel, filed his "Response" (the "Response") in opposition to the Summary Judgment Motion.[15]  The Plaintiff submitted a subsequent "Reply" (the "Reply") in support of the Summary Judgment Motion.[16]  Then, the Debtor requested leave to file a sur-reply brief,[17] which the Court granted.[18]  The "Sur-Reply" (the "Sur-Reply") purported to address "new arguments raised for the first time in Plaintiff's Reply."[19]  On June 30, 2026, the Court ordered the Debtor to supplement the Response.[20]  The Debtor complied and filed a "Supplement" (the "Supplement").[21]  Finally, the Plaintiff filed a response to the Supplement (the "Supplement Response").[22]  Suffice to say,  the issues raised in the Summary Judgment Motion are fully-briefed.

Having reviewed the Summary Judgment Motion, Response, Reply, Sur-Reply, Supplement, and Supplement Response, the Court has determined that oral argument is not necessary.  Instead, the Court may decide the dispute based upon the fulsome written materials submitted by counsel for the Plaintiff and the Debtor.

### IV.      Legal Standard Governing Motions for Summary Judgment and Burden of Proof.

Motions for summary judgment are governed by Fed. R. Civ. P. 56, as incorporated herein by Fed. R. Bankr. P. 7056.  Summary judgment is appropriate if the

---

[11]      *Id.*
[12]      Docket No. 11.
[13]      Docket No. 12.
[14]      Docket No. 21.
[15]      Docket No. 27.
[16]      Docket No. 31.
[17]      Docket No. 33.
[18]      Docket No. 38.
[19]      Docket No. 39.
[20]      Docket No. 52.
[21]      Docket No. 54.
[22]      Docket No. 55.

pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). The moving party bears the initial burden of identifying the basis for its motion and designating those portions of the record which it believes entitles it to judgment. Fed R. Civ. P. 56(c); *Celotex*, 477 U.S. at 323. In response, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . ." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Instead:

> [T]he nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant . . . . To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein.

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citations omitted). *See also Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016) (same); *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1181 (10th Cir. 2013) (nonmoving party has the affirmative duty of coming forward with evidence supporting his claim to summary judgment); *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (same).

In reviewing a motion for summary judgment, the Court must "view all facts and evidence in the light most favorable to the party opposing summary judgment." *Morris v. City of Colo. Springs*, 666 F.3d 654, 660 (10th Cir. 2012) (brackets omitted). But, unsupported, conclusory allegations will not create an issue of fact, and the nonmoving party must do more than provide its subjective interpretation of the evidence. *Tran v. Sonic Indus. Servs.*, Inc., 490 Fed. Appx. 115, 117-118 (10th Cir. 2012) (unpublished) ("Summary judgment is appropriate if the non-moving party cannot adduce probative evidence on an element of its claim upon which it bears the burden of proof.") (quoting *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995)). "A party cannot rely entirely on pleadings, but must present significant probative evidence to support its position." *Hansen v. PT Bank Negara Indonesia (Persero)*, 706 F.3d 1244, 1247 (10th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). And, "[i]f the nonmoving party fails to make a sufficient showing on an essential element with respect to which [it] has the burden of proof, judgment as a matter of law is appropriate." *Id.* However, "when the evidence could lead a rational fact-finder to resolve the dispute in favor of either party, summary judgment is improper." *C.L. Frates & Co. v. Westchester Fire Ins. Co.*, 728 F.3d 1187, 1189 (10th Cir. 2013).

### V.     Procedural Rules for Selecting the Undisputed Facts.

The critical first step in adjudicating a motion for summary judgment is to identify

5

the undisputed facts. Only then can the Court apply the law to the facts and reach a legal conclusion. Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.")

Procedural rules dictate how the alleged undisputed facts are to be presented and challenged. Fed. R. Civ. P. 56(c) governs the facts alleged by the movant or challenged by the non-movant:

> (c) Procedures.
>
> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or other materials . . . .

Then, Fed. R. Civ. P. 56(e) provides the consequences for "failing to properly support or address a fact":

> (e) Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

The Bankruptcy Court for the District of Colorado supplemented the Federal Rules of Civil Procedure by enacting its Local Bankruptcy Rules. L.B.R. 7056-1(a) governs summary judgment motions in Colorado and provides:

> (a) Motion and Memorandum in Support. Any motion for summary

6

judgment pursuant to Fed. R. Bankr. P. 7056 must include . . . .

> (3) a short and concise statement, in numbered paragraphs containing only one fact each, of the material facts as to which the moving party contends there is no genuine issue to be tried . . . .

The counterpoint is L.B.R. 7056-1(b) which governs opposition to motions for summary judgment:

> (b) Response and Memorandum in Opposition. Responses in opposition must include:
>
> > (3) a short and concise statement of agreement or opposition, in numbered paragraphs corresponding to those of the moving party, of the material facts as to which it is contended there is a genuine issue to be tried . . . .

Each alleged fact or contravention of fact (whether by the movant or the nonmovant) must be properly supported. L.B.R. 7056-1(c) tells how:

> (c) Supporting Evidence. Each statement by the movant or opponent pursuant to subdivisions (a) or (b) of this Rule, including each statement controverting any statement of material fact by a movant or opponent, must be followed by citation to admissible evidence either by reference to a specific paragraph number of an affidavit under penalty of perjury or fact contained in the record. Affidavits must be made on personal knowledge and by a person competent to testify to the facts stated, which are admissible in evidence. Where facts referred to in an affidavit are contained in another document, such as a deposition, interrogatory answer, or admission, a copy of the relevant excerpt from the document must be attached with the relevant passages marked or highlighted.

Finally, L.B.R. 7056-1(d) states what happens if a non-movant does not properly contravene alleged undisputed facts:

> (d) Admission of Facts. Each numbered paragraph in the statement of material facts served by the moving party is deemed admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement served by the opposing party.

### VI.  Undisputed Facts.

In the Summary Judgment Motion, the Plaintiff complied with Fed. R. Civ. P.

56(c) and L.B.R. 7056-1(a) by presenting 71 alleged "Material Facts."[23]  The Plaintiff also supported all of such 71 alleged material facts with citations to "particular parts of materials in the record" including: (1) the Declaration of Mr. Altaf Sial, (the "Sial Declaration")[24]; (2) the Declaration of Mr. Wadi F. Muhaisen, the Plaintiff's state court counsel (the "Muhaisen Declaration")[25]; (3) an "Order Granting Plaintiff's Motion for Entry of Final Default Judgment against Defendants Jazi Inc. and Malik Hameed" in the State Court Action"[26]; (4) an "Amended Order Re: Order Granting Plaintiff's Motion for Entry of Final Default Judgment against Defendants Jazi Inc. and Malik Hameed" in the State Court Action[27]; (5) the First Partnership Agreement[28]; (6) the "Articles of Organization" for American Trade, LLC[29]; (7) the Second Partnership Agreement[30]; (8) the "Articles of Organization" for USA Trade, LLC[31]; (9) the Debtor's "First Amended Answer and Counterclaims" in the State Court Action[32]; (10) the Plaintiff's "Amended Complaint" in the State Court Action (the "Amended Complaint")[33]; (11) the Debtor's "Answer" in the State Court Action[34]; (12) the Register of Actions in the State Court Action[35]; (13) the "Order Regarding Motion to Compel Discovery Responses from Defendant Malik Hameed and for Attorney Fees" in the State Court Action[36]; (14) the "Order Regarding Plaintiff's Renewed Motion for Sanctions Against Defendant Hameed" in the State Court Action[37]; and (15) the "Order Granting Plaintiff's Motion to Enter Default Judgment Against Defendant Hameed" in the State Court Action[38].

In the Response, the Debtor did not object to the admissibility of most of the 71 alleged Material Facts advanced by the Plaintiff.  Further, the Debtor did not support his contention that certain facts were disputed "by citation to admissible evidence either by reference to a specific paragraph number of an affidavit under penalty of perjury or fact contained in the record"[39] and instead provided a general reference to: "*See Affidavit of Malik Hameed*."  The Court ordered the Debtor to supplement the Response and identify the specific paragraphs in the Affidavit of Malik Hameed which provide support for the alleged factual dispute.[40]  The Supplement did so and also cited to various

---

[23]   Docket No. 21.
[24]   *Id.* Ex. 1.
[25]   *Id.* Ex. 2.
[26]   *Id.* Ex. 3.
[27]   *Id.* Ex. 4.
[28]   *Id.* Ex. 5.
[29]   *Id.* Ex. 6.
[30]   *Id.* Ex. 7.
[31]   *Id.* Ex. 8.
[32]   *Id.* Ex. 9.
[33]   *Id.* Ex. 10.
[34]   *Id.* Ex. 11.
[35]   *Id.* Ex. 12.
[36]   *Id.* Ex. 13.
[37]   *Id.* Ex. 14.
[38]   *Id.* Ex. 15.
[39]   L.B.R. 7056-1(c).
[40]   Docket No. 52.

exhibits in the State Court Action.[41]

The Plaintiff's Supplement Response correctly points out that that the Debtor does not dispute many of the Plaintiff's 71 alleged Material Facts.  Notwithstanding that the Debtor effectively conceded the undisputed nature of many of the facts identified by Plaintiff in the Summary Judgment Motion, most of the facts are not particularly germane to resolution of the Summary Judgment Motion because they refer to underlying alleged facts about the merits of the State Court Action.

However, given the nature of the Summary Judgment Motion which focuses on whether the Judgment in the State Court Action should be afforded collateral estoppel effect, the Court restricts its consideration to the collateral estoppel issue and identifies the following as the key undisputed facts about the State Court Action and relevant to application of collateral estoppel.

1.      "On or about June 19, 2023, Mr. Sial [Plaintiff] commenced the Civil Action [the State Court Action] against the Debtor in the District Court, Arapahoe County, Colorado, as described above, by filing a Complaint."[42]

2.      "The Debtor, through counsel, filed an Answer to Mr. Sial's initial complaint.  On October 24 2023, the Debtor filed a First Amended Answer and Counterclaims to Mr. Sial's initial Complaint."[43]

3.      On November 22, 2023, the Plaintiff "filed an Amended Complaint."[44]  In the Amended Complaint, the Plaintiff "asserted several claims against the Debtor, including claims for Breach of Fiduciary [duty], Civil Theft for Sale of Business."[45]

4.      The Plaintiff's "allegations of Civil Theft include the Debtor's sale of the Aurora location, misappropriation of the proceeds from such sale, concealment of the sale from Mr. Sial, and conversion of Mr. Sial's 50% of the proceeds for the Debtor's benefit to the exclusion of Mr. Sial."[46]

5.      "The Debtor filed an Answer to Mr. Sial's Amended Complaint in the Civil Action in or around February of 2024 disputing all claims."[47]

6.      "The Civil Action was actively contested for almost two (2) years before the State Court entered judgment against the Debtor."[48]

7.      In the State Court Action, "[t]he Debtor failed and/or refused to timely and

---

[41]      Docket No. 54.
[42]      Docket No. 21 Fact No. 47.
[43]      Docket No. 21 Fact Nos. 48, 49 and Ex. 9.
[44]      Docket No. 21 Fact No. 50 and Ex. 10.
[45]      Docket No. 21 Fact No. 51 and Ex. 10.
[46]      Docket No. 21, Fact No. 53 and Ex. 10.
[47]      Docket No. 21 Fact No. 54 and Ex. 11.
[48]      Docket No. 21 Fact No. 55 and Ex. 12.

adequately respond to Mr. Sial's discovery requests, obstructed Mr. Sial's investigation, and failed to comply with several court orders."[49]

8.      "When Mr. Sial sought to compel the discovery responses, the Debtor actively disputed these efforts over many months and through many pleadings."[50]

9.      "The State Court entered several orders compelling the Debtor's responses."[51]  "Yet, the Debtor still failed to correct his behavior in the Civil Action."[52]

10.      "Indeed, the State Court gave the Debtor a warning in its Order of March 28, 2025, the court would enter default judgment if the Debtor did not comply with the prior orders."[53]

11.      "When the Debtor again failed to comply with the State Court's orders, the court entered a default against the Debtor as a sanction for the Debtor's obstreperous conduct."[54]

12.      "The State Court further authorized Mr. Sial to seek entry of a final judgment.[55]  Mr. Sial filed an appropriate motion in the Civil Action seeking a final judgment."[56]

13.      "On July 14, 2025, the State Court entered its "Order Graning [sic] Plaintiff's Motion for Entry of Final Default Judgment Against Defendants JAZI, Inc., and Malik Hameed."[57]

14.      "Later that same day, the State Court entered an Amended Order in the Civil Action awarding a judgment in favor of Mr. Sial and against the Debtor on Mr. Sial's claims for breaches of fiduciary duty, breach of contract, breach of duty of good faith and fair dealing, civil theft (C.R.S. §18-4-405), etc., in the total amount of $504,237.64 . . . ."[58]

15.      "The Debtor did not appeal the Judgment within the time allowed under Colorado law."[59]  "As of the date the Debtor filed for bankruptcy relief, the Judgment was a final judgment."[60]

The foregoing facts also referred to and incorporated Exhibits 1-15 into the Summary

---

[49]      Docket No. 21 Fact No. 60.
[50]      Docket No. 21 Fact No. 61.
[51]      Docket No. 21 Fact No. 62 and Ex. 13 and 14.
[52]      Docket No. 21 Fact No. 63.
[53]      Docket No. 21 Fact No. 64 and Ex. 14.
[54]      Docket No. 21 Fact No. 65 and Ex. 15.
[55]      Docket No. 21 Fact No. 66.
[56]      Docket No. 21 Fact No. 67.
[57]      Docket No. 21 Fact Nos. 1 and 68 and Ex. 3.
[58]      Docket No. 21 Fact Nos. 1 and 69 and Ex. 4.
[59]      Docket No. 21 Fact No. 70.
[60]      Docket No. 21 Fact No.71.

Judgment Motion.

Importantly, the Debtor agreed in the Response that all the foregoing facts were "Undisputed."  Further, the Debtor did not object to the admissibility into evidence of Exhibits 1-15 for purposes of summary judgment adjudication.  Accordingly, the Court accepts all of the foregoing facts as the "Undisputed Facts" and the Court also accepts Exhibits 1-15.  All the other facts offered by the Plaintiff and the Debtor are extraneous to and not relevant to the narrow collateral estoppel issue.

Based on the foregoing, the Court defines the following terms:  (1) the "Amended Complaint" means the Amended Complaint (Docket No. 21 Ex. 10) filed by the Plaintiff in the State Court Action; and (2) the "Judgment" means the "Order Graning [sic] Plaintiff's Motion for Entry of Final Default Judgment Against Defendant Jazi Inc. and Malik Hameed" (Docket No. 21 Ex. 3) supplemented by the "Amended Order: Re Order Granting Plaintiff's Motion for Entry of Final Default Judgment Against Defendant Jazi Inc. and Malik Hameed" (Docket No. 21 Ex. 4) in the State Court Action.

## VII.  Legal Analysis.

### A.  The General Framework for Nondischargeability Determinations.

In the Complaint, the Plaintiff asserts that the Debtor is indebted to him by reason of the Judgment and that such debt is nondischargeable under Sections 523(a)(2)(a), (a)(4), and (a)(6)) which provide:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt — . . .
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . .
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . .
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . . .

11 U.S.C. § 523(a), (a)(4), and (a)(6).

Section 523(a) nondischargeability claims all require a two-part analysis.  First, "the bankruptcy court must determine the validity of the debt under applicable law." *Hatfield v. Thompson* (*In re Thompson*), 555 B.R. 1, 8 (10th Cir. BAP 2016); *see also Lang v. Lang* (*In re Lang*), 293 B.R. 501, 513 (10th Cir. BAP 2003) (if the alleged debt is

11

for fraud, "state law of fraud controls with respect to whether fraud has occurred"). This is referred to as the "claim on the debt" component. *Thompson*, 555 B.R. at 8. Second, if there is a valid debt, "the bankruptcy court must determine the dischargeability of that debt under Section 523." *Id.*; *see also Lang*, 293 B.R. at 513 ("bankruptcy law controls with respect to the determination of nondischargeability"). This is referred to as the "dischargeability" component. *Thompson,* 555 B.R. at 8. In the context of claims based upon fraud and fraudulent concealment, there may be substantial overlap between the "claim on the debt" and the "dischargeability" components.

The Plaintiff bears the burden of establishing nondischargeability of a particular debt under Section 523(a) by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 297, 286-87 (1991) ("requiring the creditor to establish by a preponderance of the evidence that his claim is not dischargeable reflects a fair balance between these conflicting interests."); *Houston v. Munoz* (*In re Munoz*), 536 B.R. 879, 884 (Bankr. D. Colo. 2015) (requiring creditor to prove Section 523(a) claims by a preponderance of the evidence). Additionally, exceptions to discharge under Section 523(a) "are to be narrowly construed, and because of the fresh start objectives of bankruptcy, doubt is to be resolved in the debtor's favor." *Bellco First Fed. Credit Union v. Kaspar* (*In re Kaspar*), 125 F.3d 1358, 1361 (10th Cir. 1997). *See also Sawaged v. Sawaged* (*In re Sawaged*), 2011 WL 880464, at *3 (10th Cir. BAP Mar. 15, 2011) (same).

First, the Court must determine the validity of the debt. Here, the debt arises from the Judgment issued by the State Court in the State Court Action. The Debtor does not dispute the validity of the debt and freely admits that "the judgment stands as a valid Colorado obligation."[61] Therefore, the debt is valid. Typically, the Court would proceed to address the second part of the analysis: whether the debt is nondischargeable. However, in a preliminary step, the Plaintiff has asked this Court to address the collateral estoppel effect of the Judgment.

**B.    <u>Collateral Estoppel Standards</u>.**

The Summary Judgment Motion presents a classic argument under the collateral estoppel doctrine. As set forth above, in Section 523(a) disputes, the Court must decide whether the debtor owes a debt and whether such debt is nondischargeable for a variety of reasons. However, the doctrine of collateral estoppel (sometimes referred to as issue preclusion) "precludes relitigation of an issue [of fact or law] that was litigated and decided in a previous proceeding." *Flanders v. Lawrence* (*In re Flanders*), 517 B.R. 245, 258 (Bankr. D. Colo. 2014); *See also Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."); *See Melnor, Inc. v. Corey* (*In re Corey*), 583 F.3d 1249, 1251 (10th Cir. 2009). Collateral estoppel "is a doctrine designed to promote the fundamental policies of finality, economy, consistency, and comity in the judicial process." *Flanders*, 517 B.R. at 258 (citing *Kremer v. Chem. Const.*

---

[61]     Docket No. 39 at 6.

*Corp.*, 456 U.S. 461, 466 n.6 (1982)).

> In determining the preclusive effect of a state court judgment, the full faith and credit statute, 28 U.S.C. § 1738, "directs a federal court to refer to the preclusion law of the State in which judgment was rendered." *Nichols v. Bd. of Cty. Comm'rs*, 506 F.3d 962, 967 (10th Cir. 2007) (quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S. Ct. 1327, 84 L. Ed. 2d 274 (1985)).  Issue preclusion "is a judicially created, equitable doctrine that bars the relitigation of an issue that has been previously decided in another proceeding." *Reynolds v. Cotten*, 274 P.3d 540, 543 (Colo. 2012) (citing *In re Tonko*, 154 P.3d 397, 405 (Colo. 2007)).  It is designed to "relieve parties of multiple lawsuits, conserve judicial resources, and promote reliance on the judicial system by preventing inconsistent decisions."  *Id*.  (quoting *Tonko*, 154 P.3d at 405).

*In re Hauck*, 489 B.R. 208, 213 (D. Colo. 2013).

It is black-letter law that collateral estoppel may be (and frequently is) "invoked to bar relitigation of the factual issues underlying the determination of dischargeability [under Section 523] . . . ." *Klemens v. Wallace* (*In re Wallace*), 840 F.2d 762, 764 (10th Cir. 1988); *see also Grogan*, 498 U.S. at 290 ("application of that standard [preponderance of the evidence] will permit exception from discharge of all fraud claims creditors have successfully reduced to judgment."); *Brown v. Felsen,* 442 U.S. 127, 139 n.10 (1979) ("if, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17 [the predecessor of Section 523], then collateral estoppel . . . would bar relitigation of those issues in the bankruptcy court."); *Steward Software Co., LLC v. Kopcho* (*In re Kopcho*), 2014 WL 3933657, at *2 (Bankr. D. Colo. Aug. 12, 2014); *McCain Foods USA Inc. v. Shore* (*In re Shore*), 317 B.R. 536, 541 (10th Cir. BAP 2004) ("Collateral estoppel applies in bankruptcy court actions to determine the dischargeability of a debt.").

In this case, the collateral estoppel law of the State of Colorado applies.  Under Colorado law, collateral estoppel bars subsequent relitigation of an issue if:

> (1) The issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) The party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) There was a final judgment on the merits in the prior proceeding; and (4) The party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.

*Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84-85 (Colo. 1999)) (citing

*Michaelson v. Michaelson*, 884 P.2d 695, 700-01 (Colo. 1994). *See also Reynolds v. Cotton*, 274 P.3d 540, 543 (Colo. 2012); *In re Tonko*, 154 P.3d 397, 405 (Colo. 2007).

## C.     The Summary Judgment Motion.

In the Summary Judgment Motion, the Plaintiff contends that the State Court's "factual determinations and Judgment . . . preclude the Debtor from re-litigating such issues in this Adversary Proceeding."[62]   Accordingly, further examination of the Amended Complaint and the Judgment in the State Court Action is warranted.

The Plaintiff commenced the State Court Action on June 19, 2023.  The Amended Complaint filed by the Plaintiff in the State Court Action asserted 37 facts. (Ex. 21 at Ex. 10 ¶¶ 12-48.)  The facts centered on the business relationship between the Plaintiff and the Debtor especially in relation to certain pizza shops.  The Plaintiff alleged the following claims against the Debtor: (1) breach of fiduciary duty; (2) breach of contract; (3) breach of duty of good faith and fair dealing; (4) two counts of civil theft under the Colorado Civil Theft Statute; (5) unjust enrichment; and (6) declaratory judgment.

As demonstrated by the Docket Sheet in the State Court Action (Docket No. 21 Ex. 12), the Plaintiff and the Debtor engaged in heavy litigation for more than two years, during which the Debtor engaged in litigation misconduct.  The State Court took a measured approach to the Debtor's litigation malfeasance.  On February 13, 2025, the Court entered an "Order Regarding Motion to Compel Discovery Responses from Defendants Malik Hameed and for Attorney Fees" (Docket No. 21 Ex. 13, the "Discovery Order"), wherein the State Court found that the Debtor "failed to comply with his discovery obligations" and that the "failure to respond to the discovery was not substantially justified and has caused undue delay and prejudice to the Plaintiff." Further, the State Court ordered the Debtor to "fully respond" to all pending discovery requests and warned of possible sanctions, including "entry of a default judgment."  The Debtor did not comply.

Next, on March 28, 2025, the State Court entered an "Order Regarding Plaintiff's Renewed Motion for Sanctions Against Defendant Hameed" (Docket No. 21 Ex. 14), wherein the State Court found that the Debtor: "failed to comply" with the Discovery Order; "demonstrated a pattern of willful noncompliance with discovery obligations and this Court's Orders . . . ."; and the Debtor's conduct "is willful, obstructive, and prejudicial to the Plaintiff's ability to prepare for trial."  The State Court awarded attorney's fees against the Debtor but gave the Debtor another chance to "comply with discovery" warning that default judgment would enter if "he does not comply . . . ." Again, the Debtor elected not to comply with his discovery obligations and the State Court's Orders.

Accordingly, on July 14, 2025, the State Court entered the Judgment as a default based on the Debtor's misconduct.  The Judgment recites the background and

---

[62]     Docket No. 21 at 2.

procedural history of the State Court Action. Among other things, the State Court determined:

> On March 28, 2025, the Court granted Plaintiff's Renewed Motion for Sanctions against Defendant Malik Hameed due to ongoing discovery violations, obstruction, and failure to comply with Court orders. The Court authorized Plaintiff to seek final judgment.
>
> On April 18, 2025, the Court entered an Order of Default against Defendant Hameed.

(Docket No. 21 Ex. 3 at 1.)

Next, in the Judgment, the State Court made findings of fact:

> An entry of default establishes a party's liability . . . Under C.R.C.P. 55(b) once default has entered, Plaintiff is entitled to judgment based on the well-pled facts of the complaint, deemed admitted by the defaulted defendant.
>
> Pursuant to C.R.C.P. 55(b) and established Colorado case law, all well-pleaded allegations in the Amended Complaint are deemed admitted . . . .

(Docket No. 21 Ex. 3 at 2.) So, the State Court Judgment incorporates all the well-pleaded facts stated in the Amended Complaint in the State Court Action.

Then, the State Court made a liability determination:

> The Court finds that Plaintiff has established his claims for civil theft under C.R.S. § 18-4-405, as well as claims for breach of fiduciary duty, breach of contract, fraud, and conversion, and is entitled to the relief requested.

Finally, the State Court entered declaratory relief, injunctive relief, and damages. With respect to damages, the State Court ultimately entered: (1) an award, as later amended, against the Debtor and in favor of the Plaintiff in the amount of $504,237.64[63]; (2) a joint and several damages award against the Debtor (and Jazi Inc.) and in favor of the Plaintiff in the amount of $126,000; and (3) an award of attorneys fees against the Debtor and in favor of the Plaintiff in the amount of $15,874.00. (Docket No. 21 Ex. 3 at 3-4.) The Debtor did not satisfy the Judgment and instead filed for bankruptcy protection.

---

[63]     Docket No. 21 Ex. 4.

15

In the Summary Judgment Motion, the Plaintiff asked for relatively narrow relief based on the Judgment:

> This Court may therefore adopt the Judgment as dispositive of the underlying facts pled by Mr. Sial in his Complaint in this Adversary proceeding.  The only remaining issues for trial will be the Debtor's intent as to each of Mr. Sial's claims for relief herein.
>
> . . . .
>
> Mr. Sial respectfully requests that this Court to enter an Order granting this Motion in his favor and against the Debtor applying the doctrine of collateral estoppel to the Judgment and Mr. Sial's claims for relief in the Civil Action to the issues and claims in this Adversary Proceeding.  Mr. Sial therefore requests that the Court preclude the Debtor from contesting such factual issues in this Adversary Proceeding.

(Docket No. 21 at 16 and 25.)  Importantly, the Plaintiff has not asked the Court to enter a final judgment of nondischargeability on one of more of the claims in the Complaint in the Adversary Proceeding based on the Judgment and the Summary Judgment Motion at this time.  And, the Plaintiff has confirmed repeatedly that a trial is still necessary.[64]

## D.    The Judgment Satisfies the Collateral Estoppel Doctrine.

The Judgment satisfies all the requirements for the application of the collateral estoppel doctrine.

Per *Bebo Constr. Co.*, 990 P.2d 84, the **first** requirement for invocation of collateral estoppel under Colorado law is whether "the issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding."  This element is easily satisfied.  The Plaintiff and the Debtor actually litigated the facts set forth in the Amended Complaint in the State Court Action as well as the claims set forth in the Amended Complaint, including civil theft under the Colorado Civil Theft Statute.  The Colorado Civil Theft Statute, COLO. REV. STAT. § 18-4-401(1), provides, in relevant part:

> (1) A person commits theft when he or she knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception . . . . and:
>
> (a) Intends to deprive the other person permanently of the use or benefit of the thing of value;
>
> (b) Knowingly uses, conceals, or abandons the thing of

---

[64]      Docket No. 62.

value in such manner as to deprive the other person
permanently of its use or benefit;

(c) Uses, conceals, or abandons the thing of value
intending that such use, concealment, or
abandonment will deprive the other person
permanently of its use or benefit; [or]

(d) Demands any consideration to which he or she is not
legally entitled as a condition of restoring the thing of
value to the other person . . . .

COLO. REV. STAT. § 18-4-401(1)(a)-(d).

The statute is applicable in civil matters per COLO. REV. STAT. § 18-4-405 which
states, in relevant part:

All property obtained by theft, robbery, or burglary shall be
restored to the owner, and no sale, whether in good faith on
the part of the purchaser or not, shall divest the owner of his
right to such property.  The owner may maintain an action
not only against the taker thereof but also against any
person in whose possession he finds the property. . .

The Civil Theft Statute also serves as a basis for obtaining treble damages.  *Id.*
In Colorado, a finding of civil theft requires a defendant to be found "guilty of theft under
Colorado's criminal statutes." *Kopcho*, 2014 WL 3933657, at *3 (citing *Itin v. Ungar*, 17
P.3d 129, 133 (Colo. 2000) ("[T]he General Assembly intended for this statute to require
proof of the commission of a criminal act....")).

The Tenth Circuit has held that embezzlement within the meaning of Section
523(a)(4) is "the fraudulent appropriation of property by a person to whom such property
has been entrusted or into whose hands it has lawfully come." *In re Tilley*, 286 B.R. 782,
789 (Bankr. D .Colo. 2002) (citing *Klemens v. Wallace* (*In re Wallace*), 840 F.2d 762,
765 (10th Cir. 1988)).  This definition is further broken down into five elements:

1.  Entrustment (property lawfully obtained originally);

2.  Of property;

3.  Of another;

4.  That is misappropriated (used or consumed for a
    purpose other than that for which it was
    entrusted);

17

5.  With fraudulent intent. *Id.*

Colorado, like most states, has "consolidated the crimes of larceny, embezzlement, and theft under false pretenses in a single crime of theft." *Halaseh v. People*, 463 P.3d 249, 253 (Colo. 2020).  Bankruptcy courts in Colorado have found that "[e]ven though Colorado's unified theft statute uses more modern statutory language and the crimes of larceny and embezzlement referred to in 11 U.S.C. § 523(a)(4) have common law roots, the issues that underpin civil theft, for which the Defendant was found liable in a Colorado State Court, are sufficient to establish the Defendant's liability for embezzlement under the Bankruptcy Code." *Kopcho*, 2014 WL 3933657, at *5.

In the Judgment, the State Court found the Debtor liable for "civil theft under C.R.S. § 18-4-405."  Accordingly, this is the identical issue raised by the Plaintiff in its Section 523(a)(4) claim for embezzlement in this Adversary Proceeding.  So, the first collateral estoppel element is easily satisfied.

Under *Bebo Constr. Co.*, 990 P.2d 84, the **second** requirement for invocation of collateral estoppel under Colorado law is whether "the party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding."  This requirement plainly is met because the Debtor was a defendant in the State Court Action and actively litigated the dispute (albeit engaging in discovery misconduct).

Per *Bebo Constr. Co.*, 990 P.2d 84, the **third** requirement for invocation of collateral estoppel under Colorado law is whether "there was a final judgment on the merits in the prior proceeding."  The Judgment is a final judgment on the merits.  The parties agreed as much in the Undisputed Facts.  The Debtor did not appeal the Judgment.  So, this requirement is met.

Under *Bebo Constr. Co.*, 990 P.2d 84, the **fourth** requirement for invocation of collateral estoppel under Colorado law is whether "the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding."  The Debtor had a  full and fair opportunity to litigate in the State Court Action.  The Debtor answered the Amended Complaint and denied liability.  As demonstrated by the Docket in the State Court Action, the Plaintiff and the Debtor litigated for more than two years before the entry of the Judgment, during which time the Debtor engaged in misconduct.

Notwithstanding the foregoing, the Debtor contends that the Judgment was a "default" and not entitled to collateral estoppel effect.  The Debtor cited *Melnor v. Corey (In re Corey)*, 394 B.R. 519 (10th Cir. B.A.P. 2008), aff'd 583 F.3d 1249 (10th Cir. 2009) for the proposition that "as a general rule, default judgments ordinarily do not have issue-preclusive effect because issues are not 'actually litigated.'"  (Docket No. 27 at 17.)  That is accurate as far as it goes.  However, the type of default matters.  A failure to ever appear and defend may be contrasted to heavy litigation over years involving litigation misconduct (which is what occurred in the State Court Action).  A pair of Tenth Circuit decisions explain that there is an exception for litigation misconduct.

18

*McCart v. Jordanna (In re Jordanna)*, 216 F.3d 1087 (10th Cir. 2000) (unpublished) is right on point. In that case, a bankruptcy debtor suffered an adverse pre-petition judgment by default. Just like the Judgment in the State Court Action, the default judgment in *McCart*, 216 F.3d 1087, "entered . . . as a sanction for [the debtor's] misconduct and obstructive behavior." *Id*. at *1. Similar to this Adversary Proceeding, the *McCart* judgment creditor initiated a Section 523(a) nondischargeability action against the debtor; and it sought to use the pre-petition default judgment under the collateral estoppel doctrine. Just like this dispute, the *McCart* debtor argued that the adverse judgment could not be given collateral estoppel effect because it was based on a default. The Tenth Circuit Court of Appeals made short work of the argument:

> The bankruptcy court recognized the general rule that a default judgment will not be granted preclusive effect because none of the issues was actually litigated. *See McCart,* 221 B.R. at 954. However, as both the bankruptcy court and the BAP recognized, there is an exception where the losing party has had a full and fair opportunity to participate in the previous litigation, but has engaged in serious obstructive conduct resulting in a default judgment. *See Wolstein v. Docteroff (In re Docteroff),* 133 F.3d 210, 216-17 (3d Cir. 1997) (affirming use of collateral estoppel in bankruptcy discharge proceeding where default entered because debtor wilfully obstructed discovery); *Bush v. Balfour Beatty Bahams, Ltd. (In re Bush),* 62 F.3d 1319, 1323-24 (11th Cir. 1995) (same; debtor engaged in dilatory and deliberately obstructive conduct); *FDIC v. Daily (In re Daily),* 47 F.3d 365, 368-69 (9th Cir. 1995) (same; debtor deliberately precluded resolution of factual issues by obstructing discovery process). In these circumstances, the "actual litigation" requirement of collateral estoppel may be satisfied because the party was afforded a reasonable opportunity to defend himself on the merits but choose not to do so. *See Bush,* 62 F.3d at 1324.

*McCart*, 216 F.3d 1087 at *1.

The Tenth Circuit Court of Appeals followed the same path in *Melnor,* 583 F.3d 1249. In that case, the debtor defended against a pre-petition action for fraud. But, the debtor engaged in litigation misconduct which caused the trial court to strike his defenses. And, the debtor failed to appear at the trial on damages. After suffering an adverse judgment for fraud (which he characterized as a default), the debtor filed for bankruptcy protection. The judgment creditor initiated a Section 523(a) nondischargeability action and sought to use the judgment under the doctrine of issue preclusion (collateral estoppel). The bankruptcy court and Tenth Circuit Bankruptcy Appellate Panel both concluded that the doctrine of issue preclusion barred the debtor from contesting that the debt for fraud. The Tenth Circuit Court of Appeals affirmed application of collateral estoppel finding that "imposing preclusion on Mr. Corey is

19

neither unfair to him nor likely to discourage constructive behavior . . ., on the contrary, applying preclusion doctrine here is likely to discourage obstructive and delaying tactics." *Id.* at 1252. The Tenth Circuit Court of Appeals also found support in multiple other appellate decisions: *F.D.I.C. v. Daily (In re Daily)*, 47 F.3d 365, 368 (9th Cir. 1995) (affirming application of issue preclusion with respect to default judgment where debtor's "failure to provide discovery was the result of a deliberate, dilatory course of conduct . . . ."); *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319, 1323-25 (11th Cir. 1995) (same); *Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210, 215-16 (3rd Cir. 1997). Other courts are in accord. *See Seeley Int'l Pty. Ltd. v. Maisotsenko (In re Maisotsenko)*, 2025 WL 2856635 (Bankr. D. Colo. Oct. 8, 2025) (applying collateral estoppel to a default judgment based upon litigation misconduct).

Whilst the *McCart* and *Melnor* decisions involved federal collateral estoppel law, the Court assesses that the rule is the same under Colorado law. Simply put, a party cannot appear and deny liability, litigate for years, commit litigation malfeasance, violate court orders, suffer the entry of a default judgment (which references factual admissions), and then argue that the issues were not actually litigated or that the party did not have a fair and full opportunity to defend. Although there is a dearth of reported Colorado decisions addressing such circumstances, the Court is convinced that Colorado law would follow the compelling reasoning and holdings of *McCart* and *Melnor* and similar cases.

The Judgment by default in this case is the type of default judgment that carries preclusive effect. The Debtor appeared and contested the State Court Action and the Amended Complaint for two years. During the pendency of the State Court Action, he engaged in a pattern of litigation misconduct including failing to comply with his discovery obligations. The Debtor also violated multiple orders from the State Court. As a consequence, the Court appropriately entered a default judgment. In the Judgment, the State Court made express factual findings supporting the Judgment: "all of the well-pleaded allegations in the Amended Complaint are deemed admitted . . . ." The facts in the Amended Complaint supported each of the causes of action. So, the State Court found "that Plaintiff has established his claims for civil theft under C.R.S. § 18-4-405, as well as claims for breach of fiduciary duty, breach of contract, fraud, and conversion, and is entitled to the relief requested." Then, the State Court entered into a reasoned analysis of remedies including declaratory relief, injunctive relief, and monetary damages. The Court assesses that the foregoing shows that the Debtor actively litigated at least one of the identical issues in the Adversary Proceeding (civil theft under the Colorado Civil Theft Statute) and suffered an adverse Judgment on the merits. The Debtor had a full and fair opportunity to litigate but chose to engage in abusive litigation misconduct.

Based on the foregoing, the Court determines that the Plaintiff satisfied his burden to prove the requirements for issue preclusion under the doctrine of collateral estoppel.

## VIII.   Conclusion.

For the foregoing reasons, the Court GRANTS the Summary Judgment Motion. More specifically, the Court determines that the Judgment is entitled to preclusive effect under the collateral estoppel doctrine.  The Debtor is precluded from contesting each of the well-pleaded facts stated in the Amended Complaint in the State Court Action.  Trial will proceed as scheduled on the remaining issues.

DATED this 12th day of August, 2026.

BY THE COURT:

Thomas B. McNamara,
United States Bankruptcy Judge